Paul N. Tauger (SBN 160552)
ptauger@addyhart.com
AddyHart LLC
5151 California Avenue, Suite 100
Irvine, CA 92617
(949) 438-3218
ptauger@addyhart.com

Attorney for Plaintiff/Petitioner
Apogee Law Group P.C.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| APOGEE LAW GROUP P.C., a California corporation,<br><br>Plaintiff/Petitioner,<br><br>v.<br><br>HOLLY YING LI, an individual.<br><br>Defendant/Respondent. | **CASE NO: 8:24-cv-02368-JVS-KES**<br><br>**JAMS ARBITRATION NO: 1200058273**<br><br>**OPPOSITION TO RESPONDENT'S MOTION TO DISMISS UNDER RULE 12**<br><br>**Before the Honorable JAMES V. SELNA**<br><br>**Date: July 13, 2026**<br>**Time: 1:30 pm**<br>**Courtroom: 10C** |

OPPOSITION TO RESPONDENT'S MOTION TO DISMISS UNDER RULE 12

## I.    Introduction

Respondent Holly Ying Li's ("Li") Motion to Dismiss must be denied for a variety of reasons, not the least of which is Li's failure to rebut the very strong presumption of validity that attaches to service effectuated by a U.S. Marshal.  As discussed, *infra*, Li's documented history of making false statements under penalty of perjury, both in the instant action and the underlying arbitration, deprive of credibility her self-serving assertions in her declaration.

Moreover, grounds for dismissal do not lie pursuant to FRCP 4(m) because Petitioner Apogee Law Group's ("Apogee") continual efforts to enforce its arbitration award, currently $126,406.23 , including post-judgment interest, have been continually thwarted by Li's evasion of service of process.  Even assuming Li had grounds sufficient to justify quashing service, pursuant to Fed. R. Civ. P. 4(m), the mandatory remedy would be to allow Apogee additional time to effectuate service and <u>not</u> dismissal of this action,

Petitioner Apogee therefore respectfully requests that Li's motion be denied or, should the Court determine that service has not be effectuated, that Petitioner be granted additional time to conduct discovery of Li's counsel and current employer pursuant to this Court's prior order (Docket # 51).

## II.    Facts as Determined by the Neutral Arbitrator in the Underlying Arbitration

### A.  Background

Contrary to Li's contention, this most certainly is NOT "a dispute between a law firm and its former employee."  First, as Li and her counsel are well aware, there is no "dispute."  The instant action is an enforcement of an arbitration award that is final, on the merits, and not challengeable nor appealable pursuant to California law.  Cal. Civ. Pro. Code § 1288; Petition and Motion to Confirm

Arbitration Award (Docket # 1).  Li's contention that she was an "employee" is not only false, but merely a reiteration of one of her many false representations; and further, formed a significant part of the award <u>against</u> her and in favor of Apogee.

### (1) The Arbitration Award was the Result of Li's Dishonesty

Li was engaged by Apogee as a 1099 <u>independent contractor</u> pursuant to an Offer Letter that expressly stated that she was <u>not</u> an employee of the firm.  Ex. A to the Declaration of Paul N. Tauger (hereafter, the "Tauger Decl.") at p. 14.  This distinction is important because, rather than splitting fees and costs, it allowed her to allocate all arbitration expenses to Apogee. *Id.* at p. 19.  It was false as determined by the arbitrator (*Id.* at 21) who, in his final award, included as damages Li's half of the arbitration fees and costs based on her false claim.  *Id.* at 22.  This deliberate misrepresentation on her part was merely the tip of the iceberg of her false claims and assertions which led to a significant sanctions award by the arbitrator.

Li, and not Apogee, initiated the underlying arbitration alleging, *inter alia*, that Apogee had failed to pay her contracted share of legal fees earned from a client despite the fact that these fees were never collected, a condition precedent of Apogee's payment obligations.  *Id.* at 10.  The client stopped paying Apogee for outstanding fees because of Li's adjudicated tortious conduct of transmitting fraudulent invoices that instructed the client to send invoice payments due Apogee to her non-law firm consulting company IP Advantages, LLC.  *Id.* at p. 6. This theft of client funds was addressed in the underlying arbitration and forms part of the arbitration award against Li.  *Id.*  The client discovered Li's perfidy when it received Apogee's actual invoices for services for which the client had already paid Li directly.  Accordingly, Apogee filed a counter-demand for arbitration based on Li's conversion of the funds paid by this client.

OPPOSITION TO RESPONDENT'S MOTION TO DISMISS UNDER RULE 12

Li's arbitration demand was denied in its entirety. *Id.* at 16. Pursuant to Apogee's counter-demand, Li was found liable for the intentional tort of conversion and Apogee was awarded $99,996.26, representing its actual damages, sanctions for Li's portion of the arbitration fee that she hadn't paid as result of her initial fraudulent misrepresentation of employment status, and pre- and post-judgment interest. *Id.* at 22-23. Because the award included post-judgment interest (*Id.* at 23), Li's total debt, as of the date of this filing, has risen to $126,406.23 .

### III.    Li Was Validly Served Pursuant 9 U.S.C. § 9

Pursuant to this Court's order of March 12, 2026, [Docket # 53] as well as the service provisions of 9 USC § 9, Li was served by a United States Marshal on March 30, 2026. Apogee filed the Proof of Service with this Court on April 3, 2026 (Docket # 58]. Pursuant to Cal. Evid. Code § 647, the Proof of Service creates, "a presumption, affecting the burden of producing evidence, of the facts stated in the return." Li can only rebut this presumption if she provides "strong and convincing evidence." *Rajbhandari v. US Bank*, 305 F.R.D. 689, 693-694 ("A process server's return of service is presumed to be valid and satisfies a plaintiff's initial prima facie burden absent strong and convincing evidence presented to the contrary.", *citing, Bodyup Fitness, LLC v. 2080039 Ontario, Inc.*, No. 07-22223-CIV, 2008 U.S. Dist. LEXIS 13494, 2008 WL 516996, at *3-4.

Per the Proof of Service, service was effectuated by <u>three</u> U.S. Marshals, through Julio Garcia, the doorman at the service address, who confirmed with Li that they could leave it with the doorman. Li attempts to rebut the validity of service primarily through her declaration. However, Li's conduct throughout both the underlying arbitration and the instant litigation calls into question both the reliability and the verity of her declaration.

/ / /

OPPOSITION TO RESPONDENT'S MOTION TO DISMISS UNDER RULE 12

### A.  The Arbitrator Found Li's Testimony Lacked Credibility

As a threshold matter, Li was found liable for conversion on Apogee's counter-demand, an intentional tort pursuant to California law. *Collin v. American Empire Ins. Co., 21 Cal. App. 4th* 787, 812 (1994). ("[C]onversion is considered an intentional tort."), *citing,* 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 624, pp. 717-718.

The Arbitrator's Final Award is rife with examples in which he found that Li's testimony was simply not credible.  These examples are offered because Li asks this Court to credit her present sworn declaration over the sworn return of a United States Marshal.  The arbitrator's extensive credibility findings are therefor highly probative of the weight that should be accorded to Li's declaration:

1.    In her arbitration demand, Li had testified, under oath, that the reason she sent out fraudulent invoices to Apogee's client instructing the client to pay Li's company rather than Apogee,  because Robert Hart of Apogee refused to enter his time.  She further alleged that Apogee had intentionally obstructed and prevented her from invoicing Apogee's client.

The arbitrator held the following: "I found Mr. Hart's testimony on this point more credible. . . It also defies reason that Respondent, which profits only when bills are issued and paid, would prevent Claimant from issuing bills." Tauger Decl., Ex. A at p. 9.

2.  Li testified, under oath, that she lacked access to Apogee's billing system and, for that reason, could not issue invoices.

This testimony was also simply rejected by the Arbitrator, who stated: "This was contradicted by Mr. Hart's testimony ... and is also not credible. Claimant had both power and responsibility to bill clients. . .Claimant had no problem billing CTG through Respondent . . .in the past." *Id.*

3.  Li accused Apogee and Hart, personally, of having received value from Apogee's award against the client, an accusation she has repeated in her instant motion.  The arbitrator held, "There was no credible evidence to suggest that Respondent did, in fact, receive the value of the CTG judgment." *Id.* at p. 10.  It should be noted that, as in the underlying arbitration, her instant motion fails to provide an iota of evidence supporting her calumny.

4.  A gravamen of Li's demand for arbitration was the contention that, as a matter of fact and law, she was an employee of Apogee and, therefore, only had to pay a small filing fee, with the rest of the fees and costs of the arbitration born by Apogee.  The arbitrator afforded her extensive testimony on the subject, which included her assertion under penalty of perjury that she didn't understand the meaning of "contract 1099 employee" (Tauger Decl., Ex. B, 65:2-18), finding, "The Offer Letter makes clear that it was not an offer of employment as an employee, but as a contract 1099 attorney." Tauger Decl., Ex. A p. 14.  Li's false testimony in this regard had resulted in Apogee having to cover Li's half of arbitration fees.  Per the arbitrator's Final Order, this amount forms part of his award against Li but, like the rest of Apogee's award, remains unrepaid.

5.  Li testified under oath and, indeed, has alleged in her instant motion, that she had been authorized to invoice Apogee's client on her own letterhead with instructions to remit payment to her private company rather than Apogee.  When Li's conversion was exposed, she "confessed" in an email to Hart.  Hart testified that he was flabbergasted by her email and sent a one-word response consisting of "Okay."  The arbitrator rejected Li's claim stating,

> "As Respondent correctly notes, however, Mr. Hart's 'Okay' response came after Claimant had already issued the bills to CTG from IP

OPPOSITION TO RESPONDENT'S MOTION TO DISMISS UNDER RULE 12

Advantages; thus, except with respect to the two March 17, 2017, invoices (see Exh. R-25), the response could not have authorized Claimant to do so *ex ante*. At most, it was an *ex post* ratification. However, Mr. Hart testified that he did not intend to ratify Claimant's billing practices. (See RT at 207-09.) Mr. Hart's testimony on this point was credible. Indeed, because it was not reasonable for Claimant to bill CTG through IP Advantages to begin with—especially given the potential liability, insurance, and malpractice issues Mr. Hart identified—it was not objectively reasonable for her to take his one-line 'Okay' as either an authorization or a ratification thereof." *Id.* at p. 17.

6.    Though Li had maintained throughout the arbitration, and beginning with her initial demand, that she was entitled to uncollected fees from the client whom she had defrauded, the arbitrator found: "Claimant also testified that Respondent's obligation to compensate her did not mature until client funds were actually received, where directly by Respondent or by entities affiliated with Responder or under Respondent's control." *Id.* at pp. 9-10.  It should be noted that Li had initially testified, under penalty of perjury, that she did not understand the meaning of "collected by the Firm" in connect with Offer Letter.  Tauger Decl., Ex. B 56:19-57:16

**B. Li's Lack of Credibility is Further Confirmed by Her Filings in the Instant Proceeding**

Li's carefully-worded declaration contains both deliberately misleading and simply false statements.  Specifically:

1.    In paragraphs 7 and 8 of her declaration, Li misleads the court into believing she doesn't and didn't work for Intelink Law Group in New York City where she was served.  This is <u>false</u>.  Intelink's website identifies Li as working in the New York office of Intelink.  See Ex. C to the Tauger Decl.

OPPOSITION TO RESPONDENT'S MOTION TO DISMISS UNDER RULE 12

2. In paragraph 4 of her declaration, Li claims she has "no leasehold" in the address at which she was served.  That's because it's an "investment property," i.e. she owns it rather than leases it, as she admits in paragraph 5.

3. In paragraph 6, she claims "I have not conducted business in the state of New York."  Obviously, her employer thinks otherwise.  Moreover, she admits to "managing" her New York "investment property."

4. In paragraph 7, she states, "I have not appointed anyone in the State of New York to accept legal service on my behalf."  This may be technically true.  However, as stated in the U.S. Marshal's Proof of Service, she instructed that "process could be left with the doorman (Julio) and she will get it from him."  No, she didn't appoint her doorman as an agent for service of server, but she most certainly did direct the U.S. Marshal to leave to the documents with him for her later retrieval.

5. In paragraph 9, she claims to have never worked, "from the New York City shared workspace associated with the Intelink Law Group."  This is a meaningless assertion, because her work with Intelink was all performed <u>through</u> and on behalf of Intelink's New York City office as confirmed by Intelink itself.  She further claims, "I have never conducted business from their New York City office."  This is simply false, as confirmed by Intelink itself.

6. In paragraph 15, she asserts that she has "never authorized any staff" at the apartment she owns and manages, "to accept service of process on my behalf, nor have I appointed any doorman . . . as my agent for service of process. . ."  Again, this may be technically true.  However, neither the U.S. Marshal nor Apogee have claimed that Julio the doorman was Li's agent for service of process, only that the papers were left with Julio upon Li's instruction.

OPPOSITION TO RESPONDENT'S MOTION TO DISMISS UNDER RULE 12

7. In paragraph 16, she claims that she never told anyone "including a process server, a sherif[f] deputy, or a deputy marshal to leave court papers with a doorman. [emphasis added]."  Whether or not Li thinks there is some significance to using the term "court papers" and "deputy marshal," it is clear that the U.S. Marshal, accompanied by two additional deputy U.S. Marshals left the "process" with Julio upon her confirmation that she would "get it from him later."

8. In paragraph 20, Li claims, "As shown in the phone log around 8:00 am on March 30, 2026, I did not have any phone call at all with any deputy U.S. Marshal."  This is false. The phone log, Exhibit D to her own sworn declaration, clearly shows two incoming calls, one at 8:05 am and the other at 8:16 am on March 30, 2026.

Li has been demonstrated to provide false testimony, both by the arbitrator in the underlying arbitration, and by her own words in the instant matter.  Of particular note is that nowhere in her sworn declaration testimony does she state that (1) the U.S. Marshal did not leave process with her doorman Julio, and (2) the U.S. Marshal did not confirm that she agreed that the he would do so and she would get it from Julio later, as stated in Proof of Service.  Instead, she tried to weasel-word her way around the facts attested to by a U.S. Marshal accompanied by two additional Deputy U.S. Marshals.  On this record, Li's declaration cannot reasonably be credited over the sworn return of a neutral United States Marshal. The standard for a defendant to overcome the presumption of valid service is through "clear and convincing" evidence.  *Gallego v. Garcia*, 2008 U.S. Dist. LEXIS 132186, *8 ("Defendant must provide the Court with 'clear and convincing evidence' that he was not personally served.")

Li has offered no credible and uncontradicted evidence whatsoever.  As such, Li has failed, utterly, to rebut the presumption of validity of the Proof of Service. / / /

OPPOSITION TO RESPONDENT'S MOTION TO DISMISS UNDER RULE 12

## IV.    Service was Properly Effectuated

Li claims that service was improper pursuant to California law.  As discussed, *infra*, that claim is false.

Li claims that the Proof of Service does not conform to the requirements of Cal. Civ. Proc. Code § 415.20.  Apogee notes that Li purports to quote Section 415.20, as requiring, "three good faith attempts at personal delivery on different days/times."  No such language appears in Section 415.20.  However, it is not necessary to address Li's fanciful analysis of this section because Li simply ignores Cal. Civ. Proc. Code § 416.90 that provides in its entirety:

> A summons may be served on a person not otherwise specified in this article by delivering a copy of the summons and of the complaint <u>to such person or to a person authorized by him to receive service of process</u>.
> [emphasis added]

As discussed, *supra*, the Proof of Service states, signed by the U.S. Marshal, states, "Confirmed with Holly Li that process could be left with the doorman (Julio) and she will get it from him."  As such, service was perfected under California law pursuant to Section 416.90.

Finally, "[i]t is axiomatic that strict compliance with the code's provisions for service of process is not required." *Ramos v. Homeward Residential, Inc.*, 223 Cal. App. 4th 1434, 1442-1443 (2014); *citing, Pasadena Medi-Center Associates v. Superior Court* (1973) 9 Cal.3d 773, 778, *Dill v. Berquist Construction Co.*, 24 Cal.App.4th (2014) 1426, 1436 and *Espindola v. Nunez* (1988) 199 Cal.App.3d 1389, 1391.  "Substantial compliance is sufficient." *Dill v. Berquist Construction Co.*, 24 Cal.App. 4th 1426, 1437.

The California Supreme Court has explained why this so:

> [T]he California Judicial Council and State Bar, following a joint study, recommended a comprehensive revision of the California statutes. (See 1969  Judicial Council Report, pp. 27-96; Report of the

OPPOSITION TO RESPONDENT'S MOTION TO DISMISS UNDER RULE 12

State Bar Committee on Administration of Justice (1969) 44 State Bar J. 681-684.) The suggested changes, . . . were enacted by the 1969 Legislature. Although some decisions under pre-1969 statutes required strict and exact compliance with the statutory requirements (see 2 Witkin, Cal. Procedure (2d ed. 1970) pp. 1390, 1413-1415), the provisions of the new law, according to its draftsmen, "are to be liberally construed. . . . As stated in the Nov. 25, 1968, Report of the Judicial Council's Special Committee on Jurisdiction, pp. 14-15: **'The provisions of this chapter should be liberally construed to effectuate service and uphold the jurisdiction of the court if actual notice has been received by the defendant**, and in the last analysis the question of service should be resolved by considering each situation from a practical standpoint. . . .' **The liberal construction rule, it is anticipated, will eliminate unnecessary, time-consuming, and costly disputes over legal technicalities, without prejudicing the right of defendants to proper notice of court proceedings**." (Li, Attorney's Guide to Cal. Jurisdiction and Process (Cont. Ed. Bar 1970) pp. 57-58.) [emphasis added]

*Pasadena Medi-Center Associates v. Superior Court of Los Angeles County*, 9 Cal. 3d 773, 778 (1973)

As the Court knows, Apogee has spent approximately eighteen months trying to get Li served so that it's arbitration award could be confirmed.  Li has raised every conceivable argument to avoid and delay service.  She has brought in new case law, unpled in any her pleadings, fifteen minutes before he motion to set aside default, she has filed the instant motion after the deadline for doing so, she has  misrepresented and ignored controlling statutory as discussed herein, and she has presented testimony and filed declarations under penalty of perjury containing myriad falsehoods and misleading statements.

OPPOSITION TO RESPONDENT'S MOTION TO DISMISS UNDER RULE 12

This conduct by Li had been continuous throughout the arbitration as well. The arbitrator's Final Award expressly held, "as the Arbitrator remarked at various points during the life of this case, Claimant's conduct throughout was vexatious and had the effect of unnecessarily complicating and prolonging the proceedings." Tauger Decl., Ex. A p. 20. Enough is enough. Apogee respectfully requests that this Court hold that Li has been served so that Apogee may confirm its arbitration award and proceed with collection of its judgment.

### V.     Without Regard to the Merits of the Party's Arguments Regarding Service, Dismissal is <u>Not</u> an Appropriate Remedy.

As with other statutes, in demanding dismissal of Apogee's Petition to Confirm Arbitration, Li simply ignores Fed. R. Civ. P. 4(m) which provides, in pertinent part, "If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."

This Court has held that, pursuant to the statute, extension of time to serve is <u>mandatory</u> if good cause is shown. *Ross v. White*, 2017 U.S. Dist. LEXIS 222721, *3 ("The Court must extend the time for service for an appropriate period where the plaintiff shows good cause for the failure."). This Court identified at least two facts specifically applicable to the instant matter that demonstrate "good cause" in the context of Fed. R. Civ. P. 4(m):

- "[T]he potential for prejudice to the unserved defendant," *citing Feingold v. Hankin*, 269 F.Supp.2d 268, 276 (S.D.N.Y. 2003)
- "[W]hether the statute of limitations would bar refiling the complaint if the action were dismissed," *citing Mann v. Am. Airlines*, 324 F.3d 1088, 1090 (9th Cir. 2003).

OPPOSITION TO RESPONDENT'S MOTION TO DISMISS UNDER RULE 12

Clearly, there is absolutely no prejudice to Li if additional time is granted to serve her. Of greater importance, however, is the fact that Apogee's efforts to confirm its six-figure arbitration award would be time-barred pursuant to 8 U.S.C. § 9. By her instant motion, Li seeks to avoid the consequences of her improper conduct with respect to her client and to Apogee. Neither the facts, the law, nor fundamental concepts of fairness and justice support her doing this.

## VI.    Li Failed to Participate in the Mandatory Local Rule 7-3 Conference of Counsel Before Filing the Instant Motion

Local Rule 7-3 requires a conference of counsel prior to filing a motion. No such conference ever took place, nor was one ever requested by Li's counsel. Tauger Decl., ¶ 5. Apogee does not bring up Li's violation of this Court's local rule because it wishes the Court to deny the motion on that ground. Quite the contrary, Apogee wishes the Court to decide Li's motion on the merits so Li's on-going and unwarranted delays may be disposed of once and for all. It should be noted, however, that had Li conformed to the conference of counsel requirement her failure to recognize Cal. Civ. Proc. Code § 416.90, which is dispositive of the service of question, and Fed. R. Civ. P. 4(m), regarding the inappropriate remedy requested by Li, could have been addressed, conceivably obviating any need for the instant motion. Accordingly, Li's violation of L.R. 7-3 is brought to the attention of the Court as further evidence of Li's on-going vexatious conduct in attempting to delay the inevitable.

## VII.   Conclusion

Apogee has served Li with its petition to enforce its arbitration award by a U.S. Marshal, as directed by this Court and in compliance with 9 U.S.C. § 9. As a result, the burden of proof by clear and convincing falls on Li to prove ineffective service. Li attempts this primarily through her sworn declaration. However, that

OPPOSITION TO RESPONDENT'S MOTION TO DISMISS UNDER RULE 12

declaration contains proven falsehoods and misleading assertions.  Moreover, Li's declaration shouldn't be afforded any credibility given her established and well-documents pattern of misrepresentations and falsehoods both in the underlying arbitration as cited repeatedly by the arbitrator, and in the instant matter.

Finally, Li simply misapplies and ignores controlling California and federal law, both with regard to the validity of service and the mandatory remedy should this Court find service invalid.  For these reasons, Apogee respectfully requests that this Court deny Li's motion in its entirety.

Respectfully submitted,

Date: June 21, 2026

_____
Paul N. Tauger
ADDYHART P.C.
5151 California Street
Irvine, CA 92617
Attorney for Counter Claimant
APOGEE LAW GROUP P.C.

OPPOSITION TO RESPONDENT'S MOTION TO DISMISS UNDER RULE 12

**Certificate of Service**

I hereby certify that on June 21, 2026, I filed a true and correct copy of the foregoing to be filed in this Court's CM/ECF system, which will send notification of such filing to all parties who have appeared in this matter.

June 21, 2026    _____

Paul N. Tauger

OPPOSITION TO RESPONDENT'S MOTION TO DISMISS UNDER RULE 12